UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                                      Case No. 06-CV-20603
vs.                                              HON. GEORGE CARAM STEEH

D-1 LAMAR ROBINSON,

      Defendant.

_____/

## ORDER DENYING DEFENDANT'S SECOND MOTION TO SUPPRESS EVIDENCE (#59)

Defendant Lamar Robinson moves to suppress evidence seized from his residence pursuant to March 31, 2005 and July 7, 2005 search warrants arguing the factual attestations in a March 23, 2005 affidavit underlying the initial warrant were too stale to support a finding of probable cause. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument.

Robinson is charged under a November 11, 2006 indictment with one count of conspiring with co-defendants Michael Hall, Jerry Jennison, and Roy Simpson to possess with intent to distribute marijuana and cocaine, 21 U.S.C. § 846, and three counts of being a felon in possession of a firearm, 18 U.S.C. § 922(g). The conspiracy charge, and two of the three felon in possession of a firearm charges, arise from March 31, 2005 warrant based searches of the business establishment "New York Designs" in Belleville, Michigan, and Robinson's residence at 17385 Avilla Drive in Lathrup Village, Michigan. The third felon in possession of a firearm charge arises from a July 7, 2005 warrant based search

of his residence. Following a July 12, 2007 hearing, this court denied Robinson's previous motion to suppress narcotics paraphernalia, drugs, and firearms seized pursuant to the warrants, ruling inter alia that ATF Special Agent Scott Toth's March 23, 2005 affidavit generated probable cause to support Magistrate Judge Steven Pepe's March 31, 2005 search warrant for the Avilla Drive residence. Robinson's instant motion "focuses on the staleness of the information used to justify the search executed at 17385 Avilla Blvd. . . . on March 31, 2005." Defendant's November 26, 2007 Brief, at 1. Specifically, Robinson contents that the following attestations by ATF Special Agent Toth were stale with respect to the March 31, 2005 search warrant: (1) an August 4, 2004 trash-pull at the Avilla Drive address uncovered large marijuana stems and burnt marijuana cigarettes; (2) narcotics related complaints were made by a citizen during the Summer and Fall of 2004 that expensive vehicles were arriving and departing at the Avilla Drive residence "at an abnormal frequency throughout the day"; and (3) a UPS delivery was made to the Avilla Drive address on January 30, 2005, and another was made on January 31, 2005.

The ultimate issue is whether Magistrate Judge Pepe had a substantial basis for finding that ATF Agent Toth's affidavit established probable cause to believe that evidence of criminal activity would be found at Robinson's residence. See United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991) (quoting United States v. Loggins, 777 F.2d 336, 338 (6th Cir. 1985) (per curiam)). A magistrate judge's determination of probable cause should be afforded great deference by the reviewing court. Id. (citing United States v. Pelham, 801 F.2d 875, 877 (6th Cir. 1986), cert. denied, 479 U.S. 1092 (1987)). The concept of "staleness" includes more than the temporal relationship of information in an affidavit to the search warrant.

> The standard of review for a staleness determination is the same as the standard for determining the sufficiency of an affidavit. See United States v. Canan, 48 F.3d 954, 958-59 (6th Cir.1995). In sum, a magistrate must

2

determine whether, under the totality of the circumstances, probable cause exists to issue the warrant. See id. at 958. As noted earlier, this Court will only reverse a magistrate's decision to grant a warrant if it was arbitrarily exercised. See United States v. Spikes, 158 F.3d 913, 923 (6th Cir.1998).

This Court has previously stated that "the function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." Id. at 923; Canan, 48 F.3d at 959. Rather, a staleness determination should be flexible, resting on numerous factors, such as:

> [T]he character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?)....

United States v. Greene, 250 F.3d 471, 480-81 (2001) (quoting Spikes, 158 F.3d at 923).

ATF Agent Toth attested in a 15-page affidavit to a continuing drug conspiracy among Robinson, Michael Hall, Jerry Jennison, and Roy Simpson of purchasing drugs outside of Michigan, delivering the drugs to Michigan by UPS at New York Designs and Michigan residences for repackaging, and selling the repackaged drugs throughout Belleville, Michigan. The affidavit sets forth that Robinson, also known as "Gooch," co-owned New York Designs with Jennison, that Robinson had been convicted in 1997 of possession with intent to distribute cocaine and heroin from California to Michigan and had spent four years in prison, and that two named individuals had implicated Jennison as the person who had arranged for a marijuana delivery in Michigan. Agent Toth's remaining attestations may be summarized as including:

> **June 11, 2003:** Jennison was arrested in a traffic stop, and stated he was the co-owner of New York Designs with Robinson and Hall. Jennison stated he and Robinson were forcing Hall out as an owner. Robinson posted Jennison's bond. Wayne County assumed name records listed Jennison as an owner of New York Designs.
>
> **September 6, 2003:** A Phoenix, Arizona K-9 unit "hit" on two UPS packages

3

for delivery to "John Hall" in Dearborn Heights, Michigan. 50 pounds of marijuana were found inside the packages. Jennison and Eric Summers were arrested when they took the packages from the front porch of a Dearborn Heights residence.

**September 9, 2003:** A warrant based search of Jennison's parents' home in Ypsilanti, Michigan disclosed marijuana, papers, documents, and a safe.

**September 10, 2003:** A search of one Heather Allen's Blazer at Jennison's residence disclosed paperwork in Jennison's name and a Western Union receipt for $4,776.00 wired to Phoenix, Arizona.

**November 4, 2003:** An anonymous tip to Romulus Police stated police should "look at" New York Design because "there was a lot of foot and vehicle traffic after hours."

**January 27, 2004:** A trash pull at New York Design revealed several bags containing marijuana residue, papers, and mail in Jennison's name.

**May 17, 2004:** Romulus Police Confidential informant CI-220 told Romulus Police that drugs could be purchased from Mike Hall, part owner of New York Design.

**June 7, 2004:** Michigan State Police Confidential Informant CI-63 reported seeing four guns at Robinson's house in the past year. CI-63's reliability is stated as related to past accuracy.

**June 8, 2004:** Romulus Confidential informant CI-220 made a controlled purchase of cocaine from Mike Hall and Frank Podpora. CI-220's reliability is stated as to past accuracy.

**July 8, 2004:** A trash pull at New York Design reveals plastic bags containing residue.

**August 4, 2004:** A trash pull at Robinson's residence reveals large marijuana stems and burnt marijuana cigarettes.

**August 10, 2004:** A trash pull at New York Design reveals marijuana seeds and Vanessa Williams' mail.

**Fall 2004:** Simpson tells officers he helped set up the New York Design store, and saw Jennison and Hall receive marijuana shipments by UPS, Federal Express, and U.S. Mail. Simpson states he accompanied Jennison to wire $6,000.00 to "Pablo" in Phoenix using Simpson's name, and that he has met "Pablo" at New York Design. Simpson stated that Jennison has

4

drug deliveries made to homes across the area, then takes them to a secondary location for opening, dividing, and repackaging, with one of those places being New York Design. Simpson also states that Jennison's "drug workers" include "Gooch," a/k/a Robinson, Hall, and others. Simpson states he has watched Jennison package $15,000.00 to $20,000.00 in a shoebox.

**November 23, 2004:** Attorney David Goresh, representing Myron Grey, on probation for a cocaine conviction, states Grey knows one Jeremiah Jones who obtains drugs from Jennison at New York Design.

**February 3, 2005:** Romulus Police Officer Scott McKee states he has received two narcotics related complaints from concerned citizens during the Summer and Fall of 2004 regarding expensive vehicles arriving and departing at an abnormal frequency throughout the day at Robinson's residence.

**February 7, 2005:** A trash pull at New York Design discloses a UPS sticker addressed to "GOOCH-Vanessa," a trash bag containing a torn clear plastic bag containing cocaine residue, a trash bag containing New York Design mail and a green substance testing positive for marijuana, and a cardboard UPS box addressed to New York Design that a K-9 identified positive for the presence of a narcotic odor.

**February 25, 2005:** A review of UPS delivery records showed the following number of deliveries () at: New York Design (23) from April 2004 to January 2005; Robinson's residence (2) on January 30, 31, 2005; (3) Robinson's parents' residence next-door to Robinson (12) from February 2004 to January 2005; Jones' residence (7) from November 2004 to January 2005; Hall's residence (11) from January 2003 to January 2005.

**March 16, 2005:** Surveillance at New York Design shows cars of Jennison and Robinson parked at 8:30 p.m. At 9:30 a.m., Hall's vehicle parks at New York Design. After a "few moments," all three are seen leave together.

Robinson's staleness theory ignores the totality of the circumstances outlined in ATF Agent Toth's affidavit attesting to an entrenched and regenerating drug conspiracy which included Robinson's residence as a secure operational base for delivering drugs to Michigan for repackaging and resale. Greene, 250 F.3d at 480-81. Magistrate Judge Pepe could reasonably conclude that the August 4, 2004 trash-pull, the citizen complaints made during the Summer and Fall of 2004, and the January 30 and 31, 2005 UPS deliveries to

5

Robinson's residence, *combined with* the further attestations of Robinson's over one-year involvement with Jennison as a "drug worker" and co-owner of New York Designs, a confidential informant seeing four guns at then felon Robinson's residence in 2003-2004, a February 7, 2005 trash-pull at New York Design, 23 UPS deliveries to New York Design and 12 UPS deliveries to Robinson's parents' home, and a March 16, 2005 surveillance of Robinson, Jennison, and Hall at New York Design to generate probable cause to believe that drugs or guns would be found inside Robinson's residence on March 31, 2005 in furtherance of the ongoing drug conspiracy. Affording deference to Magistrate Judge Pepe's determination of probable cause under the totality of the circumstances, the court is not persuaded that Magistrate Judge Pepe improperly arbitrarily relied upon stale information. Id. Robinson has not advanced arguments specifically addressing the July 7, 2005 search warrant. Accordingly,

For the reasons set forth above, defendant Lamar Robinson's second motion to suppress evidence is hereby DENIED.

SO ORDERED.

Dated: January 15, 2008

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 15, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---